**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **JOHN J. MONTECALVO,** | ) | **CASE NO. 4:14CV1036** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE BENITA Y. PEARSON** |
| | ) | |
| **v.** | ) | **Magistrate Judge George J. Limbert** |
| | ) | |
| **CAROLYN W. COLVIN[1],** | ) | **REPORT AND RECOMMENDATION** |
| **ACTING COMMISSIONER OF** | ) | **OF MAGISTRATE JUDGE** |
| **SOCIAL SECURITY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

Before the undersigned is a motion filed by John J. Montecalvo ("Plaintiff") to remand the above-captioned case to the Social Security Administration ("SSA") pursuant to the sixth sentence of 42 U.S.C. § 405(g) ("Section 405(g)"). ECF Dkt. #16. Defendant, Acting Commissioner of the Social Security Administration ("SSA"), has filed an opposition brief to the motion and a merits brief on the social security appeal. ECF Dkt. #17. For the following reasons, the undersigned recommends that the Court DENY Plaintiff's motion to remand, AFFIRM the ALJ's decision, and dismiss Plaintiff's case with prejudice.

**I.      PROCEDURAL AND FACTUAL HISTORY**

On January 10, 2011, Plaintiff applied for Disability Insurance Benefits ("DIB") alleging disability beginning on March 3, 2007, when he was forty-one years old. ECF Dkt. #13 ("Tr.") at 163.[2] He alleged disability due to depression, anxiety, post-traumatic stress disorder ("PTSD"), stomach problems, bowel problems, stress, problems concentrating, respiratory problems, and pain all over his body. *Id*. at 87. The SSA denied Plaintiff's application initially and upon

---

[1]On February 14, 2013, Carolyn W. Colvin became the acting Commissioner of Social Security, replacing Michael J. Astrue.

[2]References to the administrative record in this case refer to the ECF docket number of the cited document and the page number assigned to cited pleading by the ECF system, which can be found by way of the search box at the top of the page on the ECF toolbar. The page numbers correspond to the page numbers assigned in the transcript.

reconsideration. *Id*. at 87-112, 117-126, 130-138.  Plaintiff requested an administrative hearing, and, on January 28, 2013, an ALJ conducted an administrative hearing *via* videoconference and accepted the testimony of Plaintiff, who was represented by counsel, and a vocational expert ("VE").  Tr. at 43-78, 138.  On February 13, 2013, the ALJ issued a Decision denying benefits.  Tr. at 24-37. Plaintiff filed a request for review, which was denied by the Appeals Council on August 8, 2012. Tr. at 6-20.

On May 12, 2014, Plaintiff filed the instant suit seeking review of the Decision.  ECF Dkt. #1.  On March 20, 2015, Plaintiff filed a motion to remand the case under sentence six of 42 U.S.C. 405(g).  ECF Dkt. #16.  On April 20, 2015, Defendant filed a brief on the merits.  ECF Dkt. #17.

## II.     RELEVANT MEDICAL AND TESTIMONIAL EVIDENCE

Plaintiff reported that he served in the Gulf War from January 9, 1991 to May 15, 1991 and his military unit came under two Scud missile attacks and six chemical warfare attacks.  ECF Dkt. #16 at 7-8, Tr. at 264.  He indicated that he had anthrax and botulinum toxic vaccinations and was administered Pyrodostigmine Bromide pills. *Id.*  He indicated that his medical problems began after he returned home and he experiences whole body pain, sleeping problems, stomach pain, and anxiety. *Id*. He explained that the VA has encouraged him to exercise in order to relieve stress, but he could not run or lift anything heavy and he has not been to a gym since 1986. *Id*.

On August 13, 2001, Plaintiff presented to Dr. Alam complaining of persistent abdominal pains despite taking Aciphex.  Tr. at 295.  Dr. Alam noted mild epigastric tenderness upon physical examination and diagnosed epigastric abdominal pain. *Id*.  He gave Plaintiff samples of Prevacid to try after Plaintiff indicated that it gave him better relief. *Id*.

On August 1, 2002, Plaintiff presented to Dr. Alam complaining of persistent pain on the left side of his neck.  Tr. at 835.  Clinical examination showed mild tenderness in the left carotid area and he was diagnosed with carotodynia and referred for a throat evaluation. *Id*.

On May 5, 2003, Plaintiff presented to Dr. Alam complaining of abdominal cramps and diarrhea.  Tr. at 294.  No abnormalities were found upon a physical examination and Dr. Alam diagnosed epigastric abdominal pain probably caused by an antiobiotic that Plaintiff was taking. *Id*.

On July 19, 2004, Plaintiff presented to Dr. Alam complaining of low back pain after he pulled his back while carrying furniture up the stairs.  Tr. at 793.  He was given medications.  *Id*.

On August 20, 2004, Plaintiff presented to Dr. Alam reporting that his back was better with therapy but he had persistent pain on the right side of his neck.  Tr. at 794.  Clinical examination showed mild tenderness in the right carotid area and he was diagnosed with carotodynia and told to take Advil.  *Id*.

On September 16, 2004, Plaintiff presented to Dr. Alam with complaints of increasing back pain.  Tr. at 293, 795.  He indicated that he was feeling well and played basketball.  *Id.*  Physical examination showed tenderness over the paraspinal muscles in the lumbar area and slightly limited spine movements.  *Id*.  Dr. Alam diagnosed low back pain and prescribed Vioxx.  *Id*.

Plaintiff presented to Dr. Alam on September 30, 2004 complaining of a sore throat and trouble swallowing.  Tr. at 796.  He was diagnosed with a upper respiratory infection and given Amoxicillin.  *Id*.

On October 22, 2004, Plaintiff presented to Dr. Alam with a persistent sore throat and dry cough with swollen glands.  Tr. at 292, 797.  Physical examination showed slightly tender lymph nodes on the right side, a congested throat and clear lungs.  *Id*.  He was diagnosed with an upper respiratory infection and given Omnicef.  *Id*.  On November 9, 2004, Plaintiff presented with a fever, body aches and a sore throat and was again diagnosed with an upper respiratory infection and given Factiva and Zyrtec.  *Id*. at 798.

On January 4, 2005, Plaintiff presented to Dr. Alam complaining of a sore throat mostly at night.  Tr. at 799.  He was diagnosed with reflux and given aciphex.  *Id*.  On January 29, 2005, he presented to Dr. Alam for low back pain and had tenderness over his lumbar spine with slightly limited spine flexion, normal reflexes and no sensory changes and negative straight leg raising.  *Id.* at 800.  Dr. Alam diagnosed low back pain and gave him a Kenalog injection and told him to take Motrin.  *Id*.  Plaintiff saw Dr. Alam again on March 3, 2005 for his back pain and indicated that he was seeing a chiropractor.  *Id*. at 801.  After Plaintiff presented again on March 24, 2005 with

persistent low back pain without relief from chiropractic treatment or Motrin, Dr. Alam ordered a MRI. *Id*. at 802.

Plaintiff underwent a lumbar spine MRI on March 28, 2005 for his persistent lumbar pain with occasional radiation down his right foot. Tr. at 297. The MRI showed a central protrusion at L3/L4 with mild to moderate encroachment on the thecal sac, a right paracentral disc herniation with mild to moderate encroachment on the thecal sac at L4/L5 with L4/L5 mild spinal and foraminal stenosis, and L5/S1 right foraminal protrusion. *Id*. at 298.

Plaintiff presented to Dr. Alam on May 11, 2005 and June 30, 2005 with complaints of a persistent sore throat. Tr. at 803-804. Upon examination, Dr. Alam diagnosed an upper respiratory infection and prescribed Zithromax and Protonix first then Amoxicillin and indicated that he would have to see an otolargyngologist if the pain was not resolved. *Id*.

September 1, 2005 notes from Dr. Neuman, an otolaryngologist, indicate that Plaintiff was doing much better with controlling his reflux symptoms and was stopping his medication as he was no longer having symptoms. Tr. at 301.

On September 6, 2005, Plaintiff presented to Dr. Alam for low back pain and examination showed tenderness over the lower lumbar area and right sacroiliac joint. Tr. at 806. He was diagnosed with low back pain and given a Medrol dosepak and Lidoderm patches. *Id*.

On January 17, 2006, Plaintiff preseented to Dr. Alam complaining of low back pain, chest congestion, coughing and wheezing at night. Tr. at 808. Physical examination was normal and he was diagnosed with bronchitis and low back pain and given Zithromax, Advair, and Lortab. *Id*.

On March 7, 2006, Plaintiff presented to Dr. Alam complaining of feeling tired and getting angry and upset for no reason. Tr. at 807. He was diagnosed with anxiety syndrome and given samples of Lexapro. *Id*.

On March 31, 2006, Plaintiff followed up with Dr. Alam after being hospitalized with palpitations and chest discomfort. Tr. at 806. Dr. Alam noted that Plaintiff had an increased white blood cell count and his blood sugar was low. *Id*. Plaintiff reported that he was feeling better and he was taking Metaprolol. *Id*. Dr. Alam's diagnosis with leukocytosis and he told Plaintiff to continue taking Metaprolol. *Id*.

On May 18, 2006, Plaintiff complained of neck pain and stiffness to Dr. Alam after an auto accident. Tr. at 812. He went to the hospital and he reported that x-rays of his head and neck taken there were negative. *Id*. He indicated that he was performing physical therapy and taking Motrin. *Id*. Dr. Alam fould tenderness over the posterior cervical muscles upon examination and slightly limited neck movements with no sensory changes. *Id*. He diagnosed cervical strain and cerebral concussion without loss of consciousness and told him to continue therapy and taking Motrin. *Id*.

On July 7, 2006, Plaintiff presented to Dr. Alam complaining of right knee pain that occurred while he was playing basketball. Tr. at 811. Physical examination showed tenderness over the medial aspect of the joint, but Plaintiff had normal movement and pulses. Id. Dr. Alam ordered an x-ray of the right knee. *Id*.

On August 21, 2006, Plaintiff presented to Dr. Alam with left knee pain after getting injured playing basketball. Tr. at 814. He went to the emergency room after the injury and indicated that x-rays were negative for fracture. *Id*. Dr. Alam observed no swelling but tenderness over the medial aspect of the knee and normal movement. *Id*. He diagnosed knee sprain and gave him a knee brace and told him to continue on Motrin. *Id.* On August 29, 2006, Plaintiff complained again of persistent left knee pain. *Id*. at 814. Dr. Alam diagnosed knee sprain, prescribed Lortabs, and referred him to an orthopedic doctor. *Id*.

On October 3, 2006, Plaintiff followed up with Dr. Alam after an arthroscopy of his left knee. Tr. at 816. Dr. Alam noted well-healed small incisions and he removed the sutures from the knee and told Plaintiff to take Advil as needed. *Id*.

On November 18, 2006, Plaintiff presented to Dr. Alam for a checkup and requested cholesterol medication as he did not take the last one prescribed. Tr. at 815. Plaintiff's physical examination was essentially normal and Dr. Alam diagnosed hyperlipidemia after testing and prescribed Vytorin. *Id*.

On March 1, 2007, Plaintiff presented to Dr. Alam with abdominal pains and diarrhea. Tr. at 817. The abdominal examination was normal and Dr. Alam diagnosed IBS and gave Plaintiff samples of Pamine Forte. *Id.*

On March 13, 2007, Plaintiff first presented to Dr. Basciano at the VA indicating a history of peptic ulcer disease and complains of cramping pain in his lower stomach that started again in January of 2007 after he had been taking Prevacid when first diagnosed and after being diagnosed with reflux.  Tr. at 476, 676-677.  He indicated that he had a colonoscopy in December of 2006 which was normal.  *Id*.  He related that he had neck pain and swollen glands for two years and had been to all kinds of specialists who could not find any reason for his symptoms.  *Id*. at 477.  He said that the pain and swollen glands went away.  *Id*.  He reported joint pain and stiffness in his back and knee, heart palpitations, anxiety, and indigestion, reflux, dyspepsia, and changes in his bowel habits. *Id*.  Physical examination revealed normal neck examination, normal heart rate and rhythm, normal bowel sounds and no tenderness, and normal affect and orientation.  *Id*. at 478.  Dr. Basciano reviewed the lab results and prior imaging studies and diagnosed Plaintiff with reflux disease, peptic ulcer disease by history, IBS, chronic low back pain, mild generalized anxiety, past palpitations, past prostatitis, hypercholesterolemia, left knee medial meniscus repair, and hemorrhoids.  *Id*. at 479.  He started Plaintiff on a PrevPac and Tagamet, Bentyl for IBS as needed, a referral to physical therapy, and an eventual prescription for a statin.  *Id*.

On April of 2007, Plaintiff requested physical therapy for his low back pain, which was ordered.  Tr. at 473.  He also presented with complaints of stomach pains and explained to the nurse that Dr. Basciano had diagnosed him with an ulcer and the medications that Dr. Basciano prescribed were not working.  *Id*. at 475.

On May 24, 2007, Plaintiff presented to Dr. Basciano for abdominal pain over the last four months.  Tr. at 468-469.  Physical examination was normal and Dr. Basciano revised Plaintiff's medications and referred him to gastroenterology for an endoscopy.  *Id*. at 470.

On June 15, 2007, Plaintiff began physical therapy for his long-standing history of low back pain.  Tr. at 461.  Plaintiff indicated that he was treating with a chiropractor and doing well, but he moved some objects in February and reinjured his back.  *Id*.  He indicated that his pain on the date of the visit was only 1-5 out of 10 but it increases to 8 out of 10 at times.  *Id*.  He stated that the back pain starts and gets worse after he sits for awhile and then gets up from that position.  *Id*.  Physical examination showed poor sitting posture, normal range of motion of the trunk and lower extremities,

-6-

decreased core stability and no movement restrictions and no complaints of radiation to the legs. *Id*. He was scheduled for therapy and his prognosis was good with time and compliance. *Id*.

On June 27, 2007, Plaintiff presented for a gastroenterology consult for upper abdominal discomfort over the last three to four months. Tr. at 457, 543. Physical examination showed no abnormalities and his lab results were reviewed. *Id*. at 458. Dr. Pollack suspected non-ulcer dyspepsia, but he wanted to scheduled an esophagogastroduodenoscopy ("EGD") to rule out peptic ulcer disease. *Id*.

A July 10, 2007 CT scan of Plaintiff's abdomen and pelvis showed a very small lesion in the right hepatic lobe that was too small to characterize. Tr. at 275. Plaintiff's gallbladder, spleen, pancreas, adrenal glands, kidneys, aorta, bladder, prostate gland and gastrointestinal tract were unremarkable. *Id*. at 275-276. A one centimeter umbilical hernia was seen. *Id*. at 276.

On July 11, 2007, Plaintiff was discharged from physical therapy for his low back pain and reported that he felt great. Tr. at 455. He indicated that he was very active and had played six games of basketball the other day. *Id*. He also met with a social worker concerning his anxiety and he indicated that he was not depressed but anxious because he lost his job after 13 years at General Motors and he was not able to collect unemployment. *Id*. at 456-457. He had a flat affect but good eye contact, and he indicated that he was sleeping at least 8 hours per night and he noticed no change in his appetite. *Id*. He noted that he received a $130,000.00 buyout from his employer which came to $89,000.00 after taxes. *Id*.

On August 1, 2007, Plaintiff reported to Dr. Basciano that he had stopped his medicine because it was not working and he was taking Nexium that his neighbor had given him. Tr. at 452-453. Physical examination was normal and Dr. Basciano diagnosed persistent reflux, peptic ulcer disease with persistent symptoms, IBS, chronic low back pain, mild generalized anxiety and hypercholesterolemia, small umbilical hernia and small hepatic cyst. *Id*. at 454. He advised Plaintiff to have an endoscopy and to try Nexium. *Id*.

A specimen collected from an EGD of Plaintiff in September of 2007 showed no H. pylori. Tr. at 289, 444, 449, 540. It showed fragments of gastric mucosa with diffuse chronic inflammation, and frame of squamous mucosa of the distal esophagus suggestive of reflux esophagitis. *Id*.

-7-

On November 8, 2007, Plaintiff presented to Dr. Basciano for his stomach pain and because he reinjured his back. Tr. at 442. The results of testing from September 2007 were identified as showing positive for H.pyloria and he was mailed a Prevpack for treatment. *Id*. However, a supplementary report dated October 3, 2007 showed negative results for H.pylori. *Id*. Dr. Basciano diagnosed persistent reflux disease with no H.pylori and he suggested a strong functional component to Plaintiff's complaints. *Id*. at 443. He also diagnosed persistent gastritis, IBS, chronic low back pain, mild generalized anxiety, and hypercholesterolemia. *Id*. He prescribed Prevpac again and also Protonix. *Id*. at 443.

On January 23, 2008, Plaintiff presented to Dr. Alam for a checkup and still complained of stomach pain. Tr. at 291, 635, 820. He was taking another course of Prevpack. *Id*. Physical examination revealed no abnormalities and Dr. Alam diagnosed dyspepsia. *Id*. He also presented for counseling with a rehabilitation technician to discuss his employment and training options. *Id*. at 436-437. Plaintiff reported that he was working with "one stop vet rep" on training and employment and he was still upset over his company buying him out and continuing to pay employees that stayed. *Id*. at 437. He wondered if he had made the right decision to accept a buy out but was advised to move forward and not dwell on the issue. *Id*.

On February 20, 2008, Plaintiff presented to gastroenterology for follow-up of his abdominal pain. Tr. at 433, 631. It was noted that Plaintiff had H.pylori on a biopsy on September 26, 2007, but an addendum to the pathology report dated October 3, 2007 stated that the stain was negative for H.pylori. *Id.* Plaintiff took the Prevpack to treat the H.pylori and indicated that he had been treated twice before for it. *Id.* Plaintiff described his stomach pain and indicated that he had a colonoscopy in November of 2006 that was negative. *Id.* Physical examination revealed no abnormalities but prior testing showed fragments of gastric mucosa in the antrum and body with diffuse chronic inflammation but no demonstration of H.pylori and fragments of squamous mucosa in the distal esophagus suggestive of reflux esophagitis. *Id*. at 435. Dr. Cummings recommended assessment for H.pylori given the inconsistent results and she suggested a functional component to Plaintiff's symptoms perhaps relating to stressors with the loss of his job. *Id*. She prescribed a low dose of amitriptyline at bedtime. *Id*. at 436.

-8-

On March 6, 2008, Plaintiff presented to gastroenterology and reported that he had not yet started the amitriptyline that was prescribed for him for his stomach pain. Tr. at 432.  He underwent a breath test to determine whether he had H.Pylori.  *Id*.

On March 10, 2008, Plaintiff presented to Dr. Alam for his continuing abdominal pain.  Tr. at 290, 821.  Plaintiff explained that he had been to the VA Clinic and they had prescribed Carafate and Elavil that he had not yet started to take.  *Id*.  Physical examination showed no distress or abnormalities and Dr. Alam diagnosed chronic dyspepsia and low back pain.  *Id*.

On April 18, 2008, Dr. Basciano, Plaintiff's VA doctor, wrote a "To Whom It May Concern" letter indicating that Plaintiff was under his care for IBS, gastrointestinal reflux disease, peptic ulcer disease, gastritis and gastroduodenitis.  Tr. at 296.  He noted that Plaintiff was last examined on March 6, 2008.  *Id*.

On April 28, 2008, Dr. Alam wrote a "To Whom it amy[sic] concern" letter indicating that Plaintiff has been his patient for several years and first complained about abdominal pain in 2001 and since that time had experienced similar problems.  Tr. at 288. Dr. Alam noted that he had referred Plaintiff to a gastroenterologist and Plaintiff had undergone endoscopies and was diagnosed with IBS and gastritis.  *Id*.  He indicated that despite medications, Plaintiff continued to have abdominal pain and felt tired most of the time.  *Id.*  Dr. Alam listed his clinical impressions of Plaintiff's conditions as IBS and CFS.  *Id.*

On May 9, 2008, Plaintiff presented to Dr. Basciano and stated that his stomach pain was gone and he felt "so much better" after starting to take the sucralfate, amitriptyline and protonix prescribed for him.  Tr. at 428-430, 627-628.  Plaintiff also agreed to begin taking the statin prescribed for him. *Id*. at 430, 629.

On June 25, 2008, Plaintiff reported at the gastroenterology department that his stomach was feeling much better since starting amitriptyline at bedtime.  Tr. at 425, 623.  He indicated that he rarely had abdominal pain now.  *Id.*  Plaintiff was not required to continue to follow up with gastroenterology due to the resolution of his pain.  *Id*. at 426, 625.

August 27, 2008 notes from Dr. Basciano indicate that Plaintiff began taking his stomach medications as he was directed and he felt worse at first but then starting feeling better. Tr. at 424, 620. He also remarked that the antidepressant that he was taking was also working well. *Id.* He was not taking his statin, however. *Id.* He also indicated that his back pain was much better and he was doing exercises on a machine which really helped. *Id.* Physical examination was normal and Dr. Basciano diagnosed much better reflux disease, much improved gastritis, better IBS, better low back pain, mild generalized anxiety and hypercholesterolemia that was still too high. *Id.* Plaintiff agreed to taking the statin again. *Id.*

On January 20, 2009, Plaintiff presented to Dr. Alam for recurring abdominal pain after he indicated that he was taking Protonix and an antidepressant but stopped taking them a few months ago. Tr. at 822. He was diagnosed with epigastric pain and told to restart his medications. *Id.*

On January 30, 2009, Dr. Basciano examined Plaintiff, who reported that he had played basketball the night before and popped his back. Tr. at 416. He related that he has had twenty years of having "a bad back" and it flared up after playing basketball. *Id.* at 420. He indicated that he had also been staining a house for the past several weeks and his back hurt when he sat or changed positions, but felt better when he walked, iced and heated it, and when he received a cortisone shot from Dr. Alam. *Id.* at 416. Physical examination showed no cervical or spinal tenderness, mild pain with twisting motion of the lumbar spine, negative straight leg raising and intact motor strength. *Id.* He was given an injection for his chronic low back pain flare. *Id.*

February 9, 2009 notes from Dr. Basciano show that Plaintiff reported that he was feeling much better and that the cortisone shot given worked tremendously for his pain. Tr. at 413. However, Plaintiff indicated that he was not taking his statin and never started it. *Id.* Dr. Basciano noted no abnormalities on physical examination except for a small umbilical hernia. *Id.* at 414. He diagnosed reflux/gastritis that was much better, hypercholesterolemia that was "much worse!!!!!!!", IBS that was better, chronic low back pain that was better, mild generalized anxiety, and noncompliance with medications. *Id.*

On March 14, 2009, Plaintiff presented to Dr. Alam with painful red spots on the back of his throat and with a complaint that the statin was making him anxious and nervous. Tr. at 823. Dr.

Alam observed two red spots on Plaintiff's left tonsillar area, diagnosed dyspeptic ulcers and gave him Kenalog with Orabse.  *Id*.

On April 3, 2009, Plaintiff met with a nurse at the VA after twisting his right knee playing basketball.  Tr. at 409.  He said that he played a couple more games after he twisted his knee and it became swollen.  *Id*.  He saw a chiropractor who iced it and gave him an ultrasound and it felt much better.  *Id*.  The nurse's examination showed no redness or swelling, no numbness or tingling. *Id*.  On April 22, 2009, Plaintiff was examined by Dr. Basciano and reported that he was doing well.  Tr. at 408.  He told Dr. Basciano that he was taking his medications as Dr. Basciano instructed him to do so.  *Id*.  He reported that he was playing basketball several weeks ago and had some movement in his right knee but it was much better.  *Id*.  Physical examination revealed no abnormalities and Dr. Basciano indicated that Plaintiff's reflux/gastritis was much better, his hypocholesterolemia was "much better!!!!!!!", his IBS was better, his chronic low back pain and medication noncompliance were better, and he had mild generalized anxiety and right knee strain, with the right knee feeling better.  *Id*.

On August 28, 2009, Plaintiff underwent an assessment by a psychiatrist.  Tr. at 396, 497. Plaintiff presented with anxiety in dealing with everyday stressors such as unemployment and financial stressors, but he was mostly having difficulty dealing with thoughts of his childhood that was affecting his daily life and relationships.  *Id*. at 397, 498, 595.  The mental status examination revealed no hallucinations or suicidal ideations, a pleasant mood and affect, good memory and thought process, and sleeping of 8-9 hours per night.  *Id*. Plaintiff requested a male counselor to help him deal with his past family issues.  *Id*. at 400.

On September 8, 2009, Plaintiff presented to Dr. Alam with persistent back pain and teeth and mouth pain.  Tr. at 824.  Dr. Alam noted mild tenderness over the paraspinal muscles with no other abnormalities.  *Id*.  He diagnosed low back pain and IBS and gave him Pristiq samples. *Id*.

On September 18, 2009, Plaintiff met with psychologist Dr. Mako, a psychologist, for an assessment concerning his stress and anxiety.  Tr. at 394, 592-593.  Plaintiff noted that he had stomach issues, but he was experiencing none at the time.  *Id*.  He wondered if it was related to his Gulf War service.  *Id*.  Plaintiff declined a psychiatry referral as he felt that the problem was more

-11-

stress related than depression.  *Id*.  He discussed the issues that were causing him stress, including past family issues of neglect/abuse, his unemployment benefits lawsuit, his uncertain financial future, and aging issues from engaging in activities to manage his stress ijn which he overdoes it to the point of soreness and fatigue.  *Id*. at 395.  Plaintiff's GAF was rated at 68.  *Id*. at 396.

On February 2, 2010, Plaintiff presented to Dr. Alam with low back pain after he reported lifting numerous objects while remodeling an apartment.  Tr. at 825.  Dr. Alam noted tenderness over the lower lumbar paraspinal muscles and joints, with limited spine flexion, but negative straight leg raising, normal reflexes and no sensory changes.  *Id*.  He diagnosed lumbar strain and prescribed Kenalog and gave him samples of Naprelan and Fexmid.  *Id*.

On February 12, 2010, Dr. Basciano examined Plaintiff, who reported that he had stopped taking his stomach medication and cholesterol medication because he was getting mouth ulcers and his stomach was hurting.  Tr. at 360.  Plaintiff indicated that he had hurt his back lifting heavy furniture and Dr. Alam had given him injections and medications that seemed to help.  Id.  Physical examination revealed no abnormalities except a small umbilical hernia and an anxious mental state. *Id*. at 361.  Plaintiff agreed to retry the statin and amitriptlyine for his stomach.  *Id*.

On August 24, 2010, Dr. Basciano examined Plaintiff, who complained of increased stress and his gumline hurting.  Tr. at 356, 585-586.  He indicated that his primary care doctor had given him samples of Lexapro.  *Id*.  Physical examination revealed no abnormalities but for a small umbilical hernia and an anxious mood.  *Id*.  Dr. Basciano diagnosed Plaintiff with stable reflux disease with negative H. Pylori, hypercholesterolemia that was much better back on statins, IBS flares off and on, stable low back pain, generalized anxiety, noncompliance with medications was better, and tinea pedis.  *Id*.

On September 16, 2010, Plaintiff presented to Dr. Mako, a psychologist, for help to reduce his stress.  Tr. at 349, 581.  Dr. Mako assessed adjustment disorder with mixed anxiety and depressed mood.  *Id*.  at 350.  Plaintiff received counseling on October 4, 2010 and he rated his stress as a 7 out of 10.  *Id*. at 347, 577.  No disturbances were observed in his mood or affect and his medication status was noted as inconsistent.  *Id*. Plaintiff discussed whether his physical and mental symptoms resulted from his Gulf War experience and he vented frustration with his lost job and

-12-

wages and the betrayal he felt from his company. *Id*. He reported that he lifted weights to help manage his stress. *Id*. His status was listed as stable and his GAF was rated at 62. *Id*.

On October 5, 2010, Plaintiff presented to Dr. Alam with complaints of abdominal pain that was paired with panic attacks and cramps with diarrhea. Tr. at 826. Upon examination, Dr. Alam diagnosed panic disorder and IBS, prescribed Xanax and told him to continued his Elavil. *Id*.

An October 18, 2010 radiology report of the left hand showed a nondisplaced fracture of the middle phalanx of the fifth finger of the left hand. Tr. at 272. Plaintiff's finger was splinted and he was told to try to keep it elevated. *Id*. at 341, 571.

On November 1, 2010, Dr. Alam wrote a "To Whom It May Concern" letter indicating that Plaintiff had been his patient for the last ten years and had recurrent IBS and depression as a result of PTSD. Tr. at 287. He noted that Plaintiff had severe bouts of anxiety and abdominal pains and he had been prescribed medications but had no improvement. *Id*.

On November 3, 2010, Plaintiff presented for counseling and no disturbances of his mood or affect were noted. Tr. at 339, 569. Discussions were had about Plaintiff's perceived past unfair treatment regarding jobs and job strategies and their likely payoff. *Id*. at 340. Plaintiff's status was noted as stable and his GAF was rated at 66. *Id*.

On January 18, 2011, Plaintiff presented to Dr. Alam with complaints of a sore throat for a long period of time. Tr. at 827. He indicated that he saw an otolaryngologist who told him that he may have acid reflux problems and gave him Augmentin, which helped for awhile. *Id*. He reported that Nexium gave him relief. *Id*. Dr. Alam examined Plaintiff and noted mild epigastric tenderness. *Id*. He diagnosed Plaintiff with persistent sore throat most likely from reflux and told him to continue Nexium. *Id*.

January 19, 2011 notes from Dr. Basciano indicate that Plaintiff presented with a sore throat for the last three months even with taking his reflux medications. Tr. at 334, 562-564, 867. He indicated that Plaintiff's last visit with an otolaryngologist was in 2005 when he was given Augmentin which helped him. *Id*. He admitted to not taking his hypercholesterolemia medication as prescribed. *Id*. Clinical examination revealed a mildly inflamed throat, an anxious mental state and a soft abdomen with a very small umbilical hernia. *Id*. at 334-335. Dr. Basciano diagnosed

pharyngitis, hypercholesterolemia, stable IBS and peptic ulcer disease, generalized anxiety, stable low back pain, stable reflux disease/gastritis, tinea pedis and persistent noncompliance with medications. *Id*. at 335. He recommended that Plaintiff see an otolaryngologist, but Plaintiff wished to try an antibiotic and continue his antireflux medications. *Id.* Plaintiff thereafter called Dr. Basciano and indicated that he was going to see an otolaryngologist through the VA. *Id.*

Plaintiff presented to Dr. Alam on February 3, 2011 with complaints of persistent epigastric abdominal pain and a sore throat. Tr. at 828. Dr. Alam diagnosed reflux esophagitis and told Plaintiff to continue with Omepreazol and Elavil. *Id.*

February 8, 2011 psychiatry notes indicate that Plaintiff attended a mood management group where they discussed relaxation. Tr. at 559.

On March 28, 2011, Dr. Konieczny, Ph.D, conducted a psychological evaluation of Plaintiff for the agency. Tr. at 849. Dr. Konieczny noted that Plaintiff was somewhat anxious but was very pleasant and cooperative. *Id*. When asked about his disability, Plaintiff responded that he was chronically in pain and had a high level of anxiety. *Id*. at 850.

Dr. Konieczny noted that Plaintiff was quite capable of expressing himself in a clear and coherent manner, he maintained good eye contact, but he did appear somewhat anxious. Tr. at 851. Plaintiff's general thought content was normal, although reflective of his anxiety, he was not impaired in his abilities to concentrate or attend to tasks, he was oriented, and he had no deficits in his general fund of information. *Id*. His insight was fair and he had mild deficits in his overall level of judgment. *Id.* Dr. Konieczny diagnosed Plaintiff with anxiety disorder, not otherwise specified, and he opined that Plaintiff had no impairment in attention or concentration or in understanding and following directions. *Id*. at 851-852. He further opined that Plaintiff was moderately impaired in dealing with stress and pressure due to his anxiety and he had mild impairment in relating to others and in dealing with the general public. *Id.* He rated Plaintiff's functional severity at a GAF level of 60, indicating moderate symptoms. *Id*. at 852.

April 22, 2011 progress notes indicate that Plaintiff met with an otolargyngologist for his complaints of fatigue in the morning and a burning sensation in his low throat area in the morning and hoarseness with throat clearing and coughing. Tr. at 865. Upon examination, Dr. Weidenbecher

-14-

opined that Plaintiff's symptoms were likely related to his reflux and possible obstructive sleep apnea. *Id*. He counseled Plaintiff on lifestyle modifications, switched his medication to Omeprazole and scheduled a sleep evaluation. *Id*.

Plaintiff presented to Dr. Alam on May 16, 2011 for a checkup and he indicated that he had a scope done at the VA which was normal. Tr. at 891. Dr. Alam's physical examination was normal and he diagnosed reflux disorder and prescribed Xanax. *Id*.

July 11, 2011 progress notes from the otolaryngologist indicate that Plaintiff followed prior recommendations for diet and lifestyle modifications for his reflux and he initially had good improvement, but then he indicated that he began eating later and more offending foods and was doing worse. Tr. at 864. Plaintiff also complained of nasal congestion and some sleep problems. *Id*. Dr. Strauss examined Plaintiff and his impressions were history of H.pylori, reflux disorder, nasoseptal deviation and possible spenoetmoid infection, possible environmental allergy and sleep evaluation pending. *Id*. He advised Plaintiff of the diet instruction list, told him to continue taking Omeprazole and use Maalox if necessary and do a Neilmed rinse in the morning or evening. *Id*.

On November 9, 2011, Plaintiff presented to Dr. Alam with low back pain since he returned from Tennessee. Tr. at 890. Dr. Alam's examination noted tenderness over the paraspinal muscles, limited spinal flexion and no sensory changes, normal reflexes and negative straight leg raising. *Id*. He diagnosed low back pain and prescribed Kenalog and Lortabs. *Id*.

On November 10, 2011, Plaintiff presented to Dr. Alam with low back pain after lifting some heavy stone. Tr. at 889. Dr. Alam's examination noted tenderness over the paraspinal muscles, limited spinal flexion and no sensory changes, normal reflexes and negative straight leg raising. *Id*. He diagnosed low back pain and prescribed Kenalog. *Id*.

On March 1, 2012, Plaintiff presented to Dr. Alam with low back pain after moving some objects which aggravated his back. Tr. at 888. Physical examination showed tenderness over the paraspinal muscles and sacroiliac joints with limited spinal flexion. *Id*. Dr. Alam diagnosed low back pain and prescribed Kenalog. *Id*.

Radiology reports of Plaintiff's lumbar spine on June 8, 2012 showed that Plaintiff had small anterior spurs at all levels, disc space narrowing at L3-L4 and L4-L5 with mild apophyseal sclerosis and calcification of the lower abdominal aorta. Tr. at 899. Cervical x-rays showed a normal cervical spine. *Id*. at 900. A right knee x-ray showed no abnormality. *Id*. at 901. Dr. Basciano noted that the lumbar x-rays showed degenerative disc disease at L3-L4 and L4-L5. *Id*. at 931[3].

Plaintiff went for a physical therapy consultation on July 16, 2012 for his lumbar and cervical pain. Tr. at 921-922. He began physical therapy thereafter. *Id.*

On July 26, 2012, Plaintiff presented to Dr. Alam with neck pain and a left toe rash. Tr. at 887. Upon examination, Plaintiff's cervical muscles were tender but his neck movements were normal. *Id*. Dr. Alam diagnosed cervical spondylosis and prescribed Lortab and Lotrione cream. *Id*.

Physical therapy notes from July 30, 2012 indicate that Plaintiff had pain in his low back as he had been standing for over an hour at a gun range. Tr. at 920. He was instructed to take change of position breaks when at the range. *Id*. Physical therapy progress notes dated August 6, 2012 show that Plaintiff reported 2 out of 10 for his back pain and 0 out of 10 for his neck pain. Tr. at 919.

November 5, 2012 progress notes from Dr. Basciano indicate that Plaintiff reported that he was "okay" but his stomach was flaring up over the last two to three months. Tr. at 910. He indicated that when his stomach is full, he is fine, and he had no regurgitation or dysphagia. *Id*. He reported that he stopped the statin and he was taking Amitriptyline and Xanax to fall asleep. *Id*. Dr. Basciano's physical examination of Plaintiff was essentially normal and he diagnosed IBS, peptic ulcer disease and IBS flared, although he opined that it was more IBS than reflux or peptic ulcer disease. *Id*. He also indicated that Plaintiff's hypercholesterolemia was much worse off of the statin and his knee arthalgia was mild. *Id*. He increased the Amitriptyline, and advised him about his diet and to restart the statin. *Id*. at 911.

---

[3] The undersigned notes that from page 964 through page 990 of the transcript are nearly illegible.

Plaintiff also attended counseling on September 19, 2012 and November 5, 2012 and remained focused on his lost job and pension. Tr. at 911-916. His mental status was listed as stable and his GAF was rated at 65.

On November 16, 2012, Plaintiff presented to Dr. Alam for lower stomach aches and cramps without diarrhea or nausea. Tr. at 886. Physical examination was unchanged and Dr. Alam diagnosed IBS and increased Plaintiff's Elavil. *Id.*

On January 16, 2013, Dr. Bell, D.C. wrote a "To whom it may concern" letter indicating that Plaintiff has been his patient for ten years and suffers from low back and neck pain due to injuries from his military service and car accident. Tr. at 991. He indicated that despite his lack of insurance coverage, Plaintiff paid out of pocket for chiropractic care to maintain his functional status, although he has significant clinical deterioration of his back and neck conditions. *Id.* Dr. Bell opined that Plaintiff should be considered a candidate for social security disability due to his conditions. *Id.*

On June 11, 2013, Dr. Alam wrote a "To Whom It May Concern" letter stating that Plaintiff first complained of abdominal symptoms in 2001 and was diagnosed with IBS and Gastritis after going to a gastroenterologist and underoing endoscopies. Tr. at 993. He indicated that Plaintiff had IBS, reflux disease and CFS, and the esophagitis aggravated his IBS. *Id.*

## III.  SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION

The ALJ determined that Plaintiff suffered from gastritis, peptic ulcer, irritable bowel syndrome ("IBS"), adjustment disorder, lumbar degenerative disc disease ("DDD"), and PTSD, which qualified as severe impairments under 20 C.F.R. §§ 404.1520(c). Tr. at 21-22. The ALJ further determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 ("Listings"). Tr. at 22-23.

The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform a limited range of light work as defined in 20 C.F.R. §§ 404.1567(b), except that Plaintiff could not climb ladders, ropes or scaffolds, could occasionally climb ramps and stairs, was limited to simple, routine tasks which do not involve arbitration, negotiation, confrontation, directing the work of others or being responsible for the safety or welfare of others, or performing work requiring strict

production quotas, piece rate work or assembly line work and requiring only occasional interaction with others.  Tr. at 24.

The ALJ  ultimately concluded that, although Plaintiff could not perform his past relevant work as a wire harness assembler or industrial truck operator, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of a housekeeping cleaner, commercial cleaner or hand packager.  Tr. at 32.  As a consequence, the ALJ found that Plaintiff had not been under a disability as defined in the SSA and was not entitled to benefits.

**IV.** **STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS**

An ALJ must proceed through the required sequential steps for evaluating entitlement to benefits.  These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see  20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992).  The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

**V.** **STANDARD OF REVIEW**

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937, citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (citation omitted). An ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole, supra*, citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009) (citations omitted). When substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled. *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir.2001). Thus, the ALJ has a " 'zone of choice' within which he can act without the fear of court interference." *Id.* at 773.

**VI.** **ANALYSIS**

**A.** **MOTION TO REMAND**

Sentence six of § 405(g) addresses situations where a claimant submits new evidence that was not presented to the ALJ but that could alter the ALJ's ultimate decision. Sentence six of §405(g) provides, in relevant part:

> The court ... may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; and the Commissioner of Social Security shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm the Commissioner's findings of fact or the Commissioner's decision, or both ...

42 U.S.C. § 405(g).

A "sentence six" remand is appropriate "only if the evidence is 'new' and 'material' and 'good cause' is shown for the failure to present the evidence to the ALJ." *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 276 (6th Cir.2010). Evidence is "new" if it did not exist at the time of the administrative proceeding and "material" if there is a reasonable probability that a different result would have been reached if introduced during the original proceeding. *Id.* "Good cause" is demonstrated by "a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir.2001). "The party seeking a remand bears the burden of showing that these [ ] requirements are met." *Hollon ex rel. Hollon v. Comm'r of Social Security*, 447 F.3d 477, 483 (6th Cir.2006). Courts "are not free to dispense with these statutory requirements." *Hollon*, 447 F.3d at 486.

To show good cause, a claimant is required to detail the obstacles that prevented him from entering the evidence in a timely manner. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir.2007). "The mere fact that evidence was not in existence at the time of the ALJ's decision does not necessarily satisfy the 'good cause' requirement." *Courter v. Commissioner of Social Security*, 479 Fed. Appx. 713, 725 (6th Cir.2012). The Sixth Circuit "takes a harder line on the good cause test' with respect to timing and thus requires that the claimant 'give a valid reason for his failure to obtain evidence prior to the hearing.' " *Id.*, quoting *Oliver v. Secretary of Health & Human Services*, 804 F.2d 964, 966 (6th Cir.1986).

In a sentence-six remand, the court does not rule in any way on the correctness of the administrative decision, neither affirming, modifying, nor reversing the Commissioner's decision. *Melkonyan v. Sullivan*, 501 U.S. 89, 98, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991). "Rather, the court remands because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and that evidence might have changed the outcome of the prior proceeding." *Id.*

" 'Good cause' is shown for a sentence-six remand only 'if the new evidence arises from continued medical treatment of the condition, and was not generated merely for the purpose of attempting to prove disability.' " *Payne v. Comm'r of Soc. Sec.*, No. 1:09–cv–1159, 2011 WL

811422, at * 12 (W.D.Mich. Feb.11, 2010) (finding that evidence generated after the hearing and submitted to the Appeals Council for the purpose of attempting to prove disability was not "new").

Plaintiff first contends that new and material evidence exists which warrants remand of this matter to the ALJ.  He cites to a January 20, 2015 study by Baylor University scientists that he submitted in a motion to supplement the record that the Court granted on February 25, 2015.  ECF Dkt. #15.  According to Plaintiff, the study discusses a link between Gulf War Illness and the gene markers of veterans of the First Gulf War.  ECF Dkt. #16.  However, Plaintiff fails to discuss in his motion to remand or in the motion to supplement the record the relevance of his study to his case as he does not discuss his gene markers or show how this study impacts him.  Plaintiff does discuss the study and asserts his medical conditions, but he provides no medical records confirming a Gulf War Illness diagnosis or similar condition.  He merely cites to and quotes from letters from three individuals who have known him and attested to the changes in him that they observed as lay persons.  ECF Dkt. #15 at 4-10.  Since Plaintiff fails to explain or demonstrate the applicability of the Baylor University study to his gene markers or his conditions, the undersigned recommends that the Court find that this study is not material and thus does not form the basis for a remand.

Plaintiff also submits a September 22, 2014 Research Update and Recommendations by the U.S. Department of Veterans Affairs as to the Gulf War by the Research Advisory Committee on Gulf War Veterans' Illnesses.  ECF Dkt. #15 at 3-4.  Plaintiff quotes from this document which sets forth the chronic symptoms that veterans of the 1990-1991 Gulf War have experienced.  *Id*. However, Plaintiff fails to demonstrate how this document supports a finding of his entitlement to social security disability benefits or limitations of his abilities to work.  Accordingly, the undersigned recommends that the Court find that this document is not material to Plaintiff's current application and thus does not form the basis for a remand.

Plaintiff's third piece of submitted evidence is the new Social Security Ruling ("SSR") 14-1p: Titles II and XVI: Evaluating Cases Involving the Chronic Fatigue Syndrome ("CFS"), that was issued on April 3, 2014.  ECF Dkt. #16 at 2-3.  He contends that this SSR is at the "heart" of his case.  *Id*. at 3.  However, part of this SSR, as quoted by Plaintiff, specifically states that CFS is a complex of systems and the SSA requires a claimant to show that this impairment is:

> established by medical evidence that consists of signs, symptoms, and laboratory findings; therefore, a claimant may not be found disabled on the basis of a person's statement of symptoms alone.

SSR 14-1p. Yet Plaintiff spends the majority of his argument as to this SSR citing and quoting his own statements about his symptoms. ECF Dkt. #16 at 5-8, 9-12. Two of the ten pages of his memorandum on this issue do cite to some of the findings of Dr. Alam, Plaintiff's treating physician, who did state that he believed that Plaintiff had CFS. *Id.* at 8-9. However, Dr. Alam did not outline the severity of the CFS or provide any limitations resulting from the CFS. Dr. Alam did write a letter dated June 11, 2013 in which he stated that Plaintiff first complained of abdominal symptoms in 2001 and was diagnosed with IBS and Gastritis after going to a gastroenterologist and underoing endoscopies. Tr. at 993. He indicated that Plaintiff had IBS, reflux disease and CFS, but he failed to provide any insight into the severity of the conditions or any limitations resulting from them. *Id.* He also wrote a letter on November 1, 2010 indicating that Plaintiff had been a patient for ten years and had recurrent IBS and depression due to PTSD and has been prescribed medications with no improvement. Tr. at 287. However, he did not set forth his findings concerning CFS or any resulting limitations. Dr. Alam also penned a letter on April 28, 2008 indicating that Plaintiff first complained of abdominal symptoms in 2001 and he had several similar episodes for which he was diagnosed with IBS and gastritis and Dr. Alam stated that he believed that Plaintiff had IBS and CFS. *Id.* at 288. Yet again, Dr. Alam did not provide his clinical findings establishing CFS or any resulting limitations.

Nor do Dr. Alam's progress notes provide any further insight into the nature, severity or resulting limitations of the CFS. Dr. Alam's March 10, 2008 progress notes indicate that Plaintiff complained of persisting abdominal pain for which he was seen at the Department of Veteran's Affairs ("VA") Clinic and prescribed medication that he had not yet started. *Id.* at 290. Dr. Alam's January 23, 2008 progress notes show that Plaintiff was still having stomach pains. *Id.* at 291. He was diagnosed with dyspepsia and was taking Prevpack. *Id.* October 24, 2004 progress notes document a persistent sore throat and swollen glands, for which Plaintiff was diagnosed with a upper respiratory infection and given Omnicef. *Id.* at 292.

Dr. Alam's progress notes from September 16, 2004 indicate that Plaintiff was feeling well and played basketball but then presented with complaints of increasing low back pain. Tr. at 293. May 5, 2003 notes show that Plaintiff presented with abdominal cramps and diarrhea for which he was advised that an antibiotic he was on was causing his symptoms. *Id*. at 294. However, an April 18, 2008 letter from the VA advised that Plaintiff was being seen for IBS, Reflux Disease, Peptic Ulcer Disease and Gastroduodenitis. *Id.* at 296.

A nursing note dated January 19, 2011 indicates that Plaintiff was having ongoing stomach issues and he rated the intensity of his pain at a 4 on a 10-point scale. Tr. at 332. He also reported having a sore throat for three months and was taking antireflux medications, but he indicated that he was seen by an otolaryngologist in 2005 but not since and he had been given Augmentin at that time which cleared up his problem. *Id*. at 334. He also admitted that he was not taking his medications as prescribed. *Id.* October 19, 2010 notes indicated that Plaintiff presented two days with a fractured finger after he was riding his bike and fell, striking his left hand. *Id*. at 341. Plaintiff reported at a therapy session on October 4, 2010 that his IBS was acting up after months of doing well. *Id*. At 347. He indicated that he had been very upset and stressful as of late. *Id.* His medication status was listed as inconsistent. *Id.* His mental status was listed as stable and he was assigned a global assessment of functioning score of 64, indicative of mild symptoms. *Id.* at 349. September 13, 2010 progress notes of psychotherapy indicated that Plaintiff was exercising three to four hours per day. *Id*. at 351. His hypercholesterolemia was noted as much better now that he was back on a statin. *Id*. at 356. His IBS was listed as flaring intermittently. *Id.* On February 12, 2010, Plaintiff reported that he had stopped taking his stomach medications and his cholesterol medication because he was getting ulcers in his mouth and his stomach was hurting. *Id.* at 360. He also complained that his back hurt after he had been lifting heavy furniture. *Id*. He noted that Dr. Alam had given me some injections and medication and they seemed to help his pain. *Id*.

January 30, 2009 progress notes show that Plaintiff presented to Dr. Basciano after playing basketball the night before and hearing something in his back pop. Tr. at 416. He also related that he had been staining a house for the past few weeks. *Id*. He indicated that Dr. Alam had given him a cortisone shot in the past and he was icing and heating his back. *Id.* He stated that when he

-23-

walked, his back felt "great," but when he sat or changed positions, it would hurt.  *Id*.  He was assessed with chronic flared low back pain and osteoarthritis.  *Id*.  He was also diagnosed with reflux, but it was listed as controlled.  *Id*.  He was given an injection and told to use his pain medications, which he stated he used on occasion.  *Id*.

Progress notes from August 27, 2008 show that Plaintiff reported taking his stomach medications as he was supposed to and he was feeling better.  Tr. at 424.  He also indicated that his antidepressant was working for him as well.  *Id*.  He further reported that his back pain was much better and he was exercising with a Chuck Norris machine and it really helped.  *Id*.  Dr. Basciano conducted a physical examination and indicated that Plaintiff's reflux disease was much better, his gastritis was much improved, his IBS was better, his chronic low back pain was better, but his hypercholesterolemia was still too high and he had mild generalized anxiety.  *Id*.  Dr. Basciano's June 25, 2008 progress notes indicate that Plaintiff stated he was feeling much better and was rarely having abdominal pain.  *Id*. at 425.  Dr. Basciano's May 9, 2008 also indicate that Plaintiff was feeling much better with the abdominal medications and indicated that "the pain is gone." *Id*. at 430.

Due to Plaintiff's failure to reconcile the new SSR 14-1p with his CFS and to provide findings supporting such a conciliation, the undersigned recommends that the Court find that the new SSR 14-1p does not provide a basis for remanding Plaintiff's case.

Plaintiff also submits a copy of the VA's Disability Rating Decision for him finding a 60% service-connected disability for peptic ulcer disease on May 9, 2013.  ECF Dkt. #16 at 3.  That decision also denied service-connected disability for CFS, fibromyalgia and IBS.  ECF Dkt. #15-2 at 2.  The social security regulations define "evidence" that can be considered as including "[d]ecisions by any governmental or nongovernmental agency about whether or not you are disabled..." 20 C.F.R. §§ 404.1512(b)(v).  Thus, the most recent VA assessment in this case is relevant evidence.  However, the regulations further provide that such decisions are not binding upon the SSA because "[a] decision by ... any other governmental agency about whether you are disabled is based on its rule and not our decision about whether you are disabled or blind." 20 C.F.R. §§ 404.1504.

In *Deloge v. Commissioner of Social Security*, the Sixth Circuit Court of Appeals found that a social security claimant was not entitled to the remand of his claim due to a subsequent VA determination that he was 100% disabled. 540 Fed. App'x 517 (6th Cir. Oct. 15, 2013). The Sixth Circuit held that "[t]he fact of a subsequent favorable assessment is not itself new and material evidence under § 405(g); only the medical evidence that supported the favorable assessment can establish a claimant's right to remand." *Id*. The Court held that Deloge's brief did not discuss or cite to the specific evidence upon which the VA had relied when it issued its newest determination and thus he had not met his burden of establishing that the evidence was new and material. *Id*. at 519. However, the Court addressed Deloge's claim because the basis of the VA's recent assessment in his case was in the administrative record as the VA included a letter outlining the evidence that it relied upon in making its latest determination. *Id*. The Court ultimately found that Deloge failed to show a reasonable probability of the Commissioner reaching a different conclusion in its 2005 decision because the most recent VA assessment in 2008 relied upon evidence showing a deterioration of the Deloge's health after the ALJ denied his claim, and courts have declined to remand claims in light of medical evidence of deteriorated conditions. *Id*. The Court noted that the appropriate remedy is not to remand the case but for the claimant to make "a new claim for benefits as of the date that the condition aggravated to the point of constituting a disabling impairment." *Id*. at 519-520, quoting *Sizemore*, 865 F.2d at 712.

Similar to *Deloge*, Plaintiff in this case fails to discuss or cite to the specific evidence upon which the VA relied when it issued its newest determination and thus he has not met his burden of establishing that the evidence was new and material. *Deloge*, 540 Fed. App'x at 519. Further, while the VA letter in this case cites to the evidence that it relied upon in making its most recent determination, the actual evidence is not attached to the letter and much of that evidence is not included in the record before the Court.

Nevertheless, the VA letter does cite to medical records from the Cleveland VA, some of which are contained in the instant record, and it does cite to the November 1, 2010 letter from Dr. Alam. ECF Dkt. #15-2 at 3. The VA increased Plaintiff's disability claim to 60% effective March 1, 2011. *Id*. However, the ALJ addressed Plaintiff's peptic ulcer and abdominal pain from his

alleged beginning disability date of March 3, 2007 through November of 2012.  Tr. at 26.  The ALJ noted Plaintiff's medical treatment and cited to the relevant medical records, which documented Plaintiff's initial non-compliance with prescribed medications for his abdominal pain, his reports of only occasional flareups in 2009 and 2010, and noted improvement with medication compliance. *Id.* at 24-26.  The ALJ also cited to Plaintiff's daily activities that included playing basketball, riding a bike, lifting weights and working out and throwing a football.  *Id.*

In *Deloge*, the Court ultimately found that Deloge failed to show a reasonable probability of the Commissioner reaching a different conclusion in its 2005 decision because the most recent VA assessment in 2008 relied upon evidence showing a deterioration of the Deloge's health after the ALJ denied his claim, and courts have declined to remand claims in light of medical evidence of deteriorated conditions.  540 Fed. App'x at 520.  Even reviewing the medical evidence in the administrative record in this case in order to attempt to determine the evidence relied upon by the VA, much of the evidence contained therein was before the ALJ and he rendered his decision based upon that evidence.  Based upon the ALJ's review of the evidence, including Plaintiff's initial non-compliance with medication, the noted improvement when regularly taking the medication, as well as Plaintiff's reports of only occasional flareups and his numerous daily activities, the undersigned recommends that the Court find that Plaintiff has failed to show a reasonable probability that the ALJ would have reached a different conclusion if the VA disability rating decision were considered.

Moreover, the undersigned notes that Plaintiff does not challenge any part of the ALJ's decision, but rather only addresses this new evidence that he submitted in support of his motion to remand.  In light of this, and upon review of the ALJ's decision and the evidence that he cited in support thereof, the undersigned recommends that the Court find that substantial evidence supports the ALJ's decision.

The ALJ addressed each of Plaintiff's impairments, adequately considered the impairments that were severe and not severe at Step Two, and adequately addressed whether the severe impairments at Step Two met or medically equaled any of the Listings at Step Three.  Tr. at 21-24. He specifically addressed Plaintiff's abdominal impairments, his lumbar spine impairments, and his mental impairments at Steps Two and Three.  *Id.*  He reviewed the medical evidence supporting a

finding that Plaintiff could perform other work existing in significant numbers in the national economy with a RFC for limited light work with no climbing of ladders, ropes or scaffolds, occasional climbing of ramps and stairs, work limited to simple routine tasks, which does not involve arbitration, negotiation, confrontation, directing the work of others or being responsible for the safety or welfare of others, and no work requiring strict production quotas, piece rate work or assembly line work and only occasional interaction with others. *Id*. at 24-31.

As to Plaintiff's stomach problems, the ALJ cited to medical evidence indicating that Plaintiff had compliance issues with the medication on numerous occasions. Tr. at 24-26. He also noted that in June of 2008, Plaintiff no longer needed treatment from the gastroenterology clinic as his symptoms had improved when he took the medications as prescribed. *Id*. at 25. The ALJ also cited to 2010 and 2011 records showing that by this time, Plaintiff was having only occasional flareups which improved with treatment and which improved when Plaintiff took the medication that he was prescribed. *Id*. at 26. He also cited to doctor's notes indicating that Plaintiff's IBS, peptic ulcer disease and reflux were stable more often than not. *Id*. Moreover, the ALJ referenced the fact that Plaintiff was performing a significant amount of activities despite his allegations of disability, as he indicated to doctors that he was lifting weights, playing numerous basketball games, remodeling a home, lifting heavy objects, riding a bike, visiting family in Tennessee and North Carolina, and walking on a daily basis. *Id*. at 26-28.

As to Plaintiff's back impairment, the ALJ cited to numerous physical examination findings showing relatively normal results and times when Plaintiff had no back pain until after he engaged in playing basketball, lifting heavy objects or remodeling a house. Tr. at 26-28. The ALJ also noted that when Plaintiff's back pain was triggered by such activities, he received relief from epidural injections and chiropractic treatment, as well as physical therapy. *Id*.

The undersigned also notes that while Dr. Alam wrote numerous letters, none of them outlined the severity of Plaintiff's impairments or provided any limitations resulting therefrom. And Dr. Basciano provided no opinions whatsoever.

Regarding Plaintiff's mental impairments, the ALJ noted GAF scores in the 60s, indicative of moderate symptoms. Tr. at 26-29. He also referred to psychological assessments showing good memory and thought process, no impairment in concentration and attention or in understanding and following directions, and only mild impairment in relating to others and moderate impairment in withstanding stress and pressure. *Id.* at 29. He further cited to a VA psychiatric assessment in 2007 where Plaintiff reported having anxiety and was seeking to work on relaxation and anxiety. *Id*. at 28, citing Tr. at 462-466. The assessment indicated that Plaintiff had good thought process and memory and his GAF was 65. *Id*. at 28, citing Tr. at 466. The ALJ also cited to mental health treatment later through the VA showing a stable mental status examination when Plaintiff was having stress relating to childhood issues. *Id*. at 28, citing Tr. at 394-397.

With no treating physician opinions in the record, the ALJ gave significant weight to the opinions of the agency physicians and psychologists, who opined that Plaintiff could perform limited light work with the limitations that the ALJ determined. Tr. at 24, 28-31.

Based upon the ALJ's decision and the evidence that the ALJ cited in support of his determination, the undersigned recommends that the Court find that the ALJ applied the proper standards and substantial evidence supports his determination.

### B.        CREDIBILITY

The undersigned notes that Plaintiff additionally requested in his motion to remand that if a remand is ordered, his case should go to a different ALJ than the one who presided over the instant decision because the instant ALJ graded his credibility harshly. ECF Dkt. #16 at 12-16. Since the undersigned recommends that the Court conclude that a sentence six remand is not appropriate in this case, the undersigned recommends that the Court not address this request.

### VII.   RECOMMENDATION AND CONCLUSION

For the foregoing reasons, the undersigned recommends that the Court DENY Plaintiff's

motion to remand (ECF Dkt. #16),  AFFIRM the ALJ's decision, and DISMISS Plaintiff's case with prejudice.


DATE: September 14, 2015                 _____/s/George J. Limbert_____
                                         GEORGE J. LIMBERT
                                         UNITED STATES MAGISTRATE JUDGE


     ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice.  Fed. R. Civ. P. 72; L.R. 72.3.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).